**SO ORDERED: December 22, 2014.**



_____
James M. Carr
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| DONALD HENRY TRAINOR, III, | ) Case No. 13-09818-JMC-13 |
| | ) |
| Debtor. | ) |
| _____ | ) |

### ORDER OVERRULING OBJECTION TO CONFIRMATION OF PLAN

THIS MATTER comes before the Court on the First Amended Chapter 13 Plan filed by Donald Henry Trainor, III (the "Debtor") on October 30, 2013 (Docket No. 15) (the "Plan") and the Objection to Plan/Discharge of Debt filed by Suzanne Trainor (the "Creditor") on December 16, 2013 (Docket No. 25) (the "Objection"). The Court, having reviewed the Plan and the Objection, having heard the arguments of counsel for both parties at a hearing on April 30, 2014 (the "Hearing"), having reviewed the evidence admitted at the Hearing and post-hearing briefs filed by both parties, and being otherwise duly advised, now **OVERRULES** the Objection.

The Creditor objects to confirmation of the Plan primarily because she asserts that the

Plan has not been proposed in good faith pursuant to 11 U.S.C. § 1325(a)(3) and that the petition to commence this case was not filed in good faith pursuant to 11 U.S.C. § 1325(a)(7).[1] She asks that the Court sustain the Objection and order an amended plan. At the Hearing and in her post-hearing brief, she also asks the Court to dismiss the case because the petition was filed in bad faith.

*Background*

The Debtor is the former spouse of the Creditor. The parties divorced on May 27, 2011 and in the divorce decree, the state court divided up debts between the two parties. The debt that is the subject of the Objection is a debt to Chase Home Loans in the amount of $112,967 at the time of the divorce decree. In an October 2, 2012 entry, the state court found that the Debtor had "knowingly, intentionally and willfully failed to honor his obligations as to the Chase and Sallie Mae loans[.]" In a June 27, 2013 entry, the state court held the Debtor in contempt for willfully disobeying its orders regarding the Chase and Sallie Mae debts.

The Debtor filed this chapter 13 case on September 16, 2013. The Plan proposes to pay approximately $21,585 to the chapter 13 trustee during the case. Because the Creditor did not file a proof of claim by the January 14, 2014 deadline, it is not possible to calculate how much she might have received under the terms of the Plan. However, the Creditor likely would have received the vast majority of the money to be paid to the trustee under the Plan because neither the Debtor nor the Creditor dispute that her claim makes up the largest amount of the Debtor's obligations and only a few, small other claims have been filed to date.

---

[1] The Creditor also objects to the Debtor's discharge and asserts that her debts are nondischargeable pursuant to 11 U.S.C. §§ 523(a)(5), (6), and (15). The issue of the Debtor's discharge is not ripe for resolution because the Debtor has not completed his plan and has not moved for discharge. The nondischargeability issues are not properly before the Court because a proceeding to determine the dischargeability of a debt must be commenced as an adversary proceeding pursuant to Fed.R.Bankr.P. 7001(6).

*Assumptions*

In making its ruling the Court assumes that the chapter 13 trustee will make payments to the Creditor.

*§ 1323(a)(3) – Was the Plan proposed in good faith?*

The parties agree that the proper standard for good faith under § 1325(a)(3) is articulated in *In re Rimgale*, 669 F.2d 426, 432-433 (7th Cir. 1982). Factors to be considered include: (1) does the proposed plan state the debtor's secured and unsecured debts accurately?; (2) does it state the debtor's expenses accurately?; (3) is the percentage of repayment of unsecured claims correct?; (4) if there are or have been deficiencies in the plan, do the inaccuracies amount to an attempt to mislead the bankruptcy court;? and (5) do the proposed payments indicate fundamental fairness in dealing with one's creditors? *Id*. Though changes in the law have limited the relevance of some of these factors, the factors remain helpful in evaluating the central question underlying good faith: is the debtor attempting to pay his creditors or is he attempting to thwart them? *In re Jongsma*, 402 B.R. 858, 876 (Bankr.N.D.Ind.2009), *citing In re Shafer*, 393 B.R. 655, 661 (Bankr.W.D.Wis.2008). *See also In re Smith*, 286 F.3d 461, 466 (7th Cir. 2002), *citing In re Schaitz*, 913 F.2d 452, 453 (7th Cir. 1990). "…[S]imply availing oneself of the more liberal provisions of Chapter 13 to discharge a debt that is not dischargeable in Chapter 7 is not sufficient to constitute bad faith." *Id*. at 465-66, *citing In re Smith*, 848 F.2d 813, 819 (7th Cir. 1988).

Applying the *Rimgale* factors[2] to the case at hand, the Court concludes that the Debtor has proposed the plan in good faith. The Debtor's petition *overstates* the Creditor's claim on

---

[2] Factors 1, 2, and 3 no longer directly apply because chapter 13 plans no longer state all debts, filed claims control the amounts paid in the absence of a claims objection, plans do not state debtors' expenses, and the percentage of repayment required is determined by the Form B22C means test. But all three of these factors are concerned with accuracy, honesty, and truthful disclosure of information and those are the concerns that the Court is focused on as well.

schedule F. The Debtor mistakenly included Aaron Haith's[3] attorney fees in the Creditor's overall claim on schedule F, but the Creditor did not dispute that the mistakenly-included amount was correct. Though legally incorrect, the Debtor's choice to list the claim as a general unsecured claim is understandable given that a § 523(a)(15)[4] claim receives the same treatment as a general unsecured claim in a chapter 13 case. Turning to the Debtor's expenses, the Debtor has made a number of mistakes on his Form B22C that cause the means test to yield minor inaccuracies. He mistakenly listed his non-filing spouse's expenses twice and was only able to provide estimates for his childcare and educational expenses. The Debtor's schedule J expense for visitation is unsupported by the Debtor's testimony and should be removed in any amendment unless the Debtor begins to actually incur visitation expenses. Examining the totality of the circumstances, the inaccuracies are too insignificant to support the conclusion that the Debtor is attempting to mislead the Court. There is no evidence of concealed assets; there is no evidence that the Debtor has diminished his resources to reduce his ability to pay towards the Plan; there is no evidence that the Debtor has artificially inflated his expenses in an attempt to deceive the Creditor or the chapter 13 trustee. The Plan is the Debtor's good faith attempt to pay what the Bankruptcy Code requires that he pay.[5]

Separate from the *Rimgale* factors, the Creditor contends that because the household size calculation is incorrect on the Form B22C, the Debtor's expenses are artificially inflated for means test purposes. The Creditor urges the Court to adopt the holding of *Johnson v. Zimmer*, 686 F.3d 224 (4th Cir. 2012), that the best way to determine the appropriate household size for means test purposes is to use the economic unit approach. The Court declines to adopt such an

---

[3] Creditor's counsel.
[4] The Court assumes for argument that the claim is a § 523(a)(15) claim.
[5] The Form B22C usually generates the projected disposable monthly income but its utility declines as the case ages and debtors' situations change. There is no pending objection from the chapter 13 trustee asserting that the Debtor is not meeting his disposable monthly income requirement in the Plan.

approach without the input of the chapter 13 trustee and without a full briefing on the various methods of determining household size that other courts have adopted. Instead, the Court notes that even if it adopted the economic unit approach of *Johnson*, the Debtor's household size calculation would remain unchanged. The Debtor pays a substantial amount of child support every month to the Creditor for their two children. To adopt the economic unit approach would mean that the Debtor would be allowed to claim those two children as members of his household even though they don't live with him because they are both "those the debtor financially supports…" *Id.* at 237. This means that the Debtor would be allowed to claim expenses higher than his actual expenses but as the Supreme Court has noted, "this kind of oddity is the inevitable result of a standardized formula like the means test…Such formulas are by their nature over- and under-inclusive." *Ransom v. FIA Card Services, N.A.* 131 S.Ct. 716, 729 (2011).

Although there are inaccuracies in the Debtor's schedules and Form B22C, they are not significant enough to support a finding that the Plan has been proposed in bad faith.

*§ 1325(a)(7) – Was the petition filed in good faith?*

There is very little guidance from the Seventh Circuit on the application of 11 U.S.C. § 1325(a)(7) to the confirmation of chapter 13 plans. Section 1325(a)(7) appears to be the codification of the pre-BAPCPA judge-made rule from the earlier version of § 1307(c) – dismissal "for cause" where the petition was not filed in good faith. The pre-BAPCPA case *In re Love*, 957 F.2d 1350 (7th Cir. 1992), remains good law and is the most helpful case in the § 1325(a)(7) analysis.

That case identifies factors that are relevant in determining whether a chapter 13 petition was filed in good faith: "the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose;

the debtor's motive in filing the petition; how the debtor's actions affected the creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors." *Id*. at 1357. "While, admittedly, the accuracy of schedules and statements of affairs is one of several factors to be taken into consideration under the standard of 'good faith' in the filing of a case, it is a critical factor." *Jongsma*, 402 B.R. at 873. "...[T]he focus of the good faith inquiry under both Section 1307 and Section 1325 is often whether the filing is fundamentally fair to creditors and, more generally, is the filing fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions." *Love*, 957 F.2d at 1357.

  The *Love* Court also tempered its analysis, however, stating, "If we were to create a presumption when a debtor's debt arose from egregious prepetition conduct, then a debtor with egregious prepetition conduct would be foreclosed from bankruptcy unless the debtor could come forward with evidence that her later activities demonstrate good faith. Some debtors with sincere intentions in filing for Chapter 13 relief might have difficulty meeting this burden. Accordingly, such a presumption has the possibility of unjustifiably foreclosing certain debtors from Chapter 13 relief." *Love*, 957 F.2d at 1355. Additionally, "[b]ecause dismissal is harsh we agree that the bankruptcy court should be more reluctant to dismiss a petition under Section 1307(c) for lack of good faith than to reject a plan for lack of good faith under Section 1325(a)." *Id*. at 1356.

  The Court concludes that the petition was not filed in bad faith. The Creditor argues that the Debtor's motivations in filing the petition are solely to avoid paying her judgment debt and to harm her economically. However, Congress has determined that the type of debt that constitutes the Credtor's claim is dischargeable upon the successful completion of a chapter 13 plan whether

it is classified as a general unsecured claim, a § 523(a)(6) claim, or a § 523(a)(15) claim. Without more evidence of specific intent to harm the Creditor, it is not enough that the Creditor's claim might not be dischargeable in a chapter 7 case. Furthermore, at the time of the Hearing, the Debtor was current on both his child support obligation and a student loan obligation that the Debtor owes to the Creditor as part of their divorce decree. Under the terms of the Plan, the bulk of the money paid into the Plan would have gone to pay the Creditor's claim. In fact, the majority of the Debtor's income after expenses every month will go to the Creditor either as child support, a payment on the student loan obligation, or as directed by the Plan. This does not even account for the turnover of one-half of any of the Debtor's tax refund every year, as contemplated in the Plan. The payout that the Creditor would receive under the plan will not be the entire amount of her claim but it would be much more than just a *de minimis* sum. This is consistent with the intent of chapter 13.

The Debtor's prepetition conduct towards the Creditor is troubling, but the Court is mindful of the Seventh Circuit's admonition in *Love* that egregious prepetition conduct alone is not sufficient to justify the finding of bad faith that would result in dismissal. There is insufficient evidence to show that the Debtor is attempting to mislead the Court and there is insufficient evidence that the Debtor's postpetition conduct in his chapter 13 case is attempting to treat the Creditor in a manner that is inconsistent with the law. The evidence does not support a finding that either the Plan or the petition was filed in bad faith. Therefore, the Objection is **OVERRULED**.

The Court and the parties have identified areas where the schedules and Form B22C are not completely accurate. In order to facilitate the proper administration of the case, the Court hereby **ORDERS** the Debtor to file amended schedules I and J to correct the identified (or other)

inaccuracies within 30 days of the date of this order. The Debtor is also **ORDERED** to file an amended plan **only if** the amended schedules show that such an amended plan is necessary within 7 days of the filing of the amended schedules described above. The Court expects that there will be no decrease in the dividend to the Creditor absent a showing of a significant change in the Debtor's circumstances.

    IT IS SO ORDERED.

# # #